**TANKSLEY v. UNITED STATES.**
No. 10628.

Circuit Court of Appeals, Ninth Circuit.
Sept. 21, 1944.

Cecil H. Clegg and Julien A. Hurley, both of Fairbanks, Alaska (Herman Weinberger, of San Francisco, Cal., of counsel), for appellant.

Harry O. Arend, Asst. U. S. Atty., of Fairbanks, Alaska (Ralph J. Rivers, of Fairbanks, Alaska, of counsel), for appellee.

Before WILBUR, DENMAN, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Appellant was indicted, tried by jury and convicted of the crime of rape committed near Fairbanks, Alaska, in violation of Section 4768 of the Criminal Code of Alaska, and sentenced to imprisonment for six years under Section 4769 of that code. He has appealed here from that sentence.

The complaining witness was a married woman nineteen years of age. Appellant's defense was that after preliminary embraces of an experienced character, they drove to a then unused roadhouse nearby, where she willingly joined in the admitted sexual intercourse and then demanded $100 as her compensation. The charge of rape, appellant claims, arose from her anger at not being paid that amount, and to compel its payment. The complaining witness took the stand and contradicted these statements. Her testimony of her conduct before and after the alleged rape, corroborated and contradicted, and her sole evidence of the rape itself, supports the verdict on the inference that the appellant's defense was untrue and that she was the unfortunate victim of a brutal outrage.

The case was tried at Fairbanks, the vicinage of the alleged acts. At the opening of the trial, the court ordered the public excluded and admitted only the parties and their counsel, the officers of the law, representatives of the press, and the brother and father of the defendant. Defendant claimed his right to a public trial, given by the Sixth Amendment, made an objection to the order of the court which was overruled, excepted, and here assigns as error a denial of that right.

The government relies on two decisions of this court in appeals from the sentences of the Alaska District Court for the crime of rape, Reagan v. United States, 9 Cir.,

202 F. 488, 44 L.R.A.,N.S., 583, and Callahan v. United States, 9 Cir., 240 F. 683, relying on the decision in the Reagan case, in both of which there was a similar exclusion of the public. However, in both these cases the indictments were for significantly different provisions of the section of the Alaska Criminal Code defining the crime of rape. That section is 4768 and reads as follows: "Whoever has carnal knowledge of a female person, forcibly and against her will, or being sixteen years of age, carnally knows and abuses a female person under sixteen years of age, with her consent, is guilty of rape."

In both these earlier cases the victims were girls fourteen years of age. In neither case could the defense of consent be raised. In the case of this adult married woman, the trial court reasonably could expect that such would be the defense of the accused.

In the Reagan case this court did not hold that the exclusion of the public was not a violation of the defendant's right to a public trial. What was held was that, on the facts existing in that case, no possible prejudice could have been suffered by the defendant from the exclusion of the public. The opinion states that ground of the decision at page 490 of 202 F., 44 L.R.A., N.S., 583, as follows: "The only conceivable benefit the defendant might have been deprived of by the order of the court in this case was the presence in the courtroom of a crowd of idle, gaping loafers, whose morbid curiosity would lead them to attend such a trial, and the consequent embarrassment and annoyance their presence might cause to the unfortunate girl who was called upon to testify to the story of the defendant's crime and her shame. Of the deprival of that benefit the defendant has no legal ground to complain."

Having thus found on the facts concerning these fourteen year old children that there could be no prejudice, we treat as dictum the court's statement that "We think the better doctrine is that it is not reversible error to exclude the spectators as was done by the order of the court in the case at bar, when there is no showing whatever that the defendant was prejudiced thereby, or deprived of the presence, aid, or counsel of any person whose presence might have been of advantage to him."

■ We do not agree with this dictum that, upon the denial of the constitutional right to a public trial, the burden falls on the defendant to show that he was prejudiced by the denial. We agree with the decision of the Eighth Circuit in Davis v. United States, 8 Cir., 247 F. 394, 398, L.R.A.1918C, 1164, that "A violation of the constitutional right necessarily implies prejudice and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard."

■ It is obvious that the defendant's presumption of innocence of raping this adult married woman requires that he shall be given his full right to establish his claim to her consent to the admitted sexual intercourse. Equally obvious that such a defense will cause the accusing witness "embarrassment" in a public trial whether testifying truly or falsely. It would be denying the defendant his presumption of innocence and a predecision by the court of his guilt to hold that such a married woman must be relieved of that embarrassment because she is "called upon to testify to the story of the defendant's *crime* and her shame." [Emphasis supplied]. (See matter quoted above from the Reagan case.) Whether or not it was proper for the trial judge in that case to exclude the public on the assumption that the crime had been committed on those fourteen year old girls, no such assumption can be made here.

■ One of the main purposes of the admission of the public is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial—for example, here where the defense is that the accusing witness is a woman who desires to be paid for her sexual intercourse. If such a woman, another man who had had such paid intercourse might be in attendance. Realizing the danger to the defendant of the heavy penalty for the serious crime charged, he well might advise defendant's counsel of his experience with the accusing witness. Even without this his very presence in the courtroom might arouse in her a fear or sense of shame that would alter or weaken her testimony against the accused.

This latter is the reason ascribed by Hale and Blackstone for the right of accused to the presence of the public at common law trials. Hale commends the system of giving evidence "in the presence of the

parties, counsel *and all bystanders"* [emphasis supplied] and later, contrasting the merits of such trial against the ecclesiastical trials upon deposition, states:

"Ninethly, the excellency of this *Open* course of evidence to the jury, in presence of the judge, jury, parties and counsel, and even of the adverse witnesses, appears in these particulars.

"1st. That it is openly, and not in private before a commissioner or two, and a couple of clerks; where, oftentimes witnesses will deliver that which they will be ashamed to testify publickly." [1]

Blackstone follows in almost the same language.[2]

It is apparent that the defendant would not know of the excluded persons who would thus create in a witness the fear of the shame of public exposure of false testimony, a shame to be heightened by the fear of prosecution for perjury.

Blackstone and Hale are among the accepted text books for the lawyers who were members of the constitutional convention. Whether or not that convention had in mind these particular portions of the writings of these two authorities, we recognize them as describing the reasons for the right to a public trial at the common law, which prevailed in the United States when the Constitution was framed.

■ It is not necessary to consider whether there is a discretionary power in the trial court to exclude from the courtroom minor children, State v. Adams, 100 S.C. 43, 84 S.E. 368; or persons actually disturbing the proceedings, State v. Callahan, 100 Minn. 63, 110 N.W. 342; or those likely to create a disturbance, United States v. Buck, Fed.Cas.14,680; or adults in cases in which, as the trial progresses, facts are developed of pathologic and revolting perversion. Assuming there may be such discretion, the trial court erred in assuming the power of exclusion here exercised at this trial on the charge of rape of an adult woman.

■ We find no error in the other assignments of error. As stated, there is sufficient evidence to warrant the verdict. The indictment sufficiently describes, by her maiden name, the woman upon whom it is charged the rape was committed. The failure at the preliminary hearing to state all the facts attending the claimed rape in response to the instruction "to proceed and tell what happened," is not a ground of impeachment. State v. Ogden, 39 Or. 195, 65 P. 449. The sentence which constitutes the judgment is sufficiently preceded by the recital of the finding of the verdict of guilty.

■ Appellant was entitled to demand the giving of a proper proposed instruction concerning impeachment. There was no error in refusing his requested instruction No. 6, reading,

"Instruction 6 Requested by the Defendant. You are instructed that a witness may be impeached by the party against whom he or she was called by contradictory evidence or by evidence that he or she had made at other times statements inconsistent and at variance with what he or she may have testified to upon the witness stand.

"If you believe that any witness in this case has been successfully impeached, you will be justified in disregarding the entire testimony of such witness unless his or her testimony is corroborated by other credible evidence in the case or by facts and circumstances proven on the trial. * * *"

The court gave the following instruction: "If you find that any witness has wilfully testified falsely in one part of his or her testimony in this case, you may distrust any part, or all of the testimony of such witness, but you are not bound to reject the entire testimony of a witness because he or she has wilfully testified falsely in some part of the testimony; you should reject the false part, and should give the other parts such weight as you may deem they are justly entitled to receive."

---

[1] Sir Matthew Hale, History of the Common Law of England; ch. XII, Runnington's ed., pp. 343 and 345.

[2] At page 372 of his tenth edition he states: "And all this evidence is to be given in open court, in the presence of the parties, their attorneys, the counsel, and all by-standers."

And at page 373 he states: "This open examination of witnesses viva voce, in the presence of all mankind, is much more conducive to the clearing up of truth, than the private secret examination taken down in writing before an officer, in the ecclesiastical courts, and all others that have borrowed their practice from the civil law: where a witness may frequently depose that in private, which he will be ashamed to testify in a public and solemn tribunal."

We believe this instruction sufficiently covers the question of impeachment.

Reversed.

HEALY, Circuit Judge (concurring).

I agree with what Judge DENMAN has said, and think, with him, that a new trial should be had from which the public is not excluded.

There was no genuine reason for the exclusion order. It was made at the instance of the judge, without any suggestion on the part of the prosecuting officers of the Territory. The defendant vigorously insisted on his constitutional right to a public trial. It is only under very exceptional circumstances that such right may properly be circumscribed, and no unusual circumstances were present here.

While I recognize the force of the statute (28 U.S.C.A. § 391) providing that errors are to be disregarded "which do not affect the substantial rights of the parties," it must not be forgotten that in and of itself the right to a public trial is a substantial right, so substantial, indeed, as to be guaranteed by the Sixth Amendment.

WILBUR, Circuit Judge (dissenting).

The opinion seeks to distinguish the case at bar from the decisions of this court in Reagan v. United States, 9 Cir., 202 F. 488, 44 L.R.A.,N.S., 583, and Callahan v. United States, 9 Cir., 240 F. 683, dealing with the right to a public trial secured to the defendant by the Sixth Amendment to the federal Constitution. The trial court relied upon these cases to sustain the order he made on his own motion excluding part of the public from the trial. The appellant, in his brief, seeks to differentiate the cases from the case at bar but in argument admitted that if we followed these previous decisions we would have to rule that there is no error in the order of exclusion made by the court. I do not agree that the fact that each of those two cases dealt with a trial for the commission of rape on a girl 14 years of age (under the age of consent) while the present rape was committed upon a young woman 19 years of age, differentiates the cases. It is true that there is a difference in that respect but it does not distinguish the constitutional question of the right to a public trial here involved. The decision in Reagan v. United States, supra, was written by an experienced judge, and concurred in by his associates who both had long judicial experience, and the court deliberately rejected the line of cases which denied to the trial court discretion in excluding a portion of the public from a trial for rape such as in the case at bar. In that regard it is there said (page 490 of 202 F., 44 L.R.A., N.S., 583) :

"We think the better doctrine is that it is not reversible error to exclude the spectators as was done by the order of the court in the case at bar, when there is no showing whatever that the defendant was prejudiced thereby, or deprived of the presence, aid, or counsel of any person whose presence might have been of advantage to him. The constitutional provision for a public trial should be construed in a reasonable sense, and in view of the object thereby intended to be subserved. The mere denial of the literal right should not be held ground for reversing a judgment, unless it can be perceived that the defendant had been deprived of some benefit or advantage thereby."

In this connection it should be stated that before making an exclusion order the trial court asked the defendant to specify any member of the public whom he desired to have present. He was unable to name any person or persons whom he desired to have in court other than those permitted by the order but asserted the general right to have the public present at the trial.

In the case of Gaines v. Washington, 277 U.S. 81, 83, 85, 48 S.Ct. 468, 469, 72 L.Ed. 793, the Supreme Court took notice of the two views as to the question of the right to public trial under the Sixth Amendment to the Constitution of the United States. The court said: "Many state Constitutions contain a substantially similar guaranty and restriction. The question what constitutes a public trial the right to which is thus guaranteed and what discretion a court may exercise in limiting the audience and spectators is one upon which the cases differ. Two views are given in Reagan v. United States, 9 Cir., 202 F. 488, 44 L.R.A., N.S., 583, and Davis v. United States, 8 Cir., 247 F. 394, L.R.A.1918C, 1164, in both of which many state cases are cited. According to some of them, the order complained of here would be regarded as erroneous, while in others it would be held to be within the judicial discretion of the court."

The court did not pass upon the proper interpretation of the Sixth Amendment to the federal Constitution because it was not

applicable to trials in a state court and the writ of error in that case was directed to the state of Washington. It is now proposed, as I view it, to reverse our decisions, one of which has stood for more than 30 years, and to adopt the principle laid down by the Eighth Circuit Court of Appeals in Davis v. United States, 247 F. 394, L.R.A.1918C, 1164, cited above by the Supreme Court in Gaines v. Washington, supra.

In this connection it should be noted that since the decision in Davis v. United States, supra, Congress has enacted a statute, 28 U.S.C.A. § 391, adopted in 1919, prohibiting reversal of cases for " * * * errors, defects, or exceptions which do not affect the substantial rights of the parties." Prior to that time prejudice was presumed from the mere commission of an error in a criminal case and required a reversal unless it could be seen from the entire record that no prejudice resulted. The act of Congress reversed the presumption in regard to the presumption of prejudice from an error and it is now necessary for the appellant to show that the error, if any, was prejudicial. The statement of Judge Sanborn, in the court's opinion in Davis v. United States, supra, that prejudice would be presumed from the denial of a constitutional right, was made prior to the act of 1919, 28 U.S.C.A. § 391, and must be read in the light of that statutory change. Unless we are to · assume that where the right affected by the error is a constitutional one the error will be presumed to be prejudicial notwithstanding the statutory change, we must look to the record to ascertain that there has been prejudice and here none was shown nor attempted to be shown. The statute makes no such distinction and I think none exists.

It may be that the ruling of the trial court in excluding portions of the public from the court room was too broad in excluding so large a portion of the public but the error, if any, is not so clear and certain as to justify our overruling the long standing opinion of this court which has not only been acted upon by the trial court but is the rule applied in a great many of the states.

As I view it, the case of Reagan v. United States decided two things: First, that it is not error to limit the number of spectators who could enter the court room in a case of this kind; and, second, that if it was error it was not prejudicial. To this add the recent decisions concerning the effect of the statutory amendment, 28 U.S.C. A. § 391, supra. It was not shown by the defendant that he was prejudiced by the ruling of the trial court.

I do not agree with the proposition enunciated in the main opinion that "one of the main purposes of the admission of the public is the reasonable possibility that persons unknown to the parties or their counsel, but having knowledge of the facts, may be drawn to the trial—" etc. I do not believe that the quotation from Hale justifies the statement that the purpose of the public trial rule is to arouse in witnesses fear or a sense of shame, or the hope that the public trial might attract witnesses who would volunteer information concerning their own wrong-doing.

I think that Judge Cooley in his work on Constitutional Limitations (p. 383) has made a correct statement as to the reasons requiring public trial. This statement is quoted with approval by the Supreme Court of California in People v. Hartman, 103 Cal. 242, 244, 37 P. 153, 154, 42 Am.St. Rep. 108: "While a right to the public trial contemplated by the constitution does not require of courts unreasonable and impossible things, as that all persons have an absolute right to be present and witness the court's proceedings, regardless of the conveniences of the court, and the due and orderly conduct of the trial, yet this provision must have a fair and reasonable construction in the interest of the person accused. Judge Cooley, in his work upon Constitutional Limitations (page 383), has well declared the true rule in the following language: 'The requirement of a public trial is for the benefit of the accused,—that the public may see that he is fairly dealt with, and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility, and to the importance of their functions; and the requirement is fairly observed if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would only be drawn hither by a prurient curiosity, are excluded altogether.'" This case was cited by our court in United States v. Reagan, supra.

The opinion of the majority proceeds upon the theory that evidence of other acts of incontinency by the complaining wit-

nesses would be admissible in evidence in favor of the defendant. The majority of the states hold to the contrary, although there are some that permit such testimony. The question is not involved in this appeal before us and should not be introduced into the case by a mere assumption that someone might have volunteered such testimony.